SANFORD JAY ROSEN – 62566
ERNEST GALVAN – 196065
AMY WHELAN – 215675
SUMANA COOPPAN – 267967
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, 10th Floor
San Francisco, California 94104-1823
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104

GERI LYNN GREEN – 127709
LAW OFFICES OF GERI LYNN GREEN, LC
155 Montgomery Street, Suite 901
San Francisco, California 94104-4166
Telephone:   (415) 982-2600
Facsimile:    (415) 358-4562

Attorneys for Plaintiff MICHEAL JONATHON DANIELS

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHEAL JONATHON DANIELS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF FOLSOM, SERGEANT ANDREA CHAPMAN, POLICE CHIEF SAM SPIEGEL, SHARON BLACKBURN, SERGEANT RICK HILLMAN, FOLSOM POLICE DEPARTMENT FIELD OPERATIONS DIVISIONS CAPTAIN PAUL BONAVENTURE, CITY MANAGER KERRY MILLER, OFFICER WARNER HERNDON, OFFICER C. FRIEDERICH, OFFICER JAMES DORRIS, OFFICER H.R. ALVAREZ, OFFICER PAUL RICE, and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No. 2:10-CV-00630-FCD-JFM<br><br>**AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. This case involves the FOLSOM POLICE DEPARTMENT'S unlawful and unwarranted use of force against Plaintiff MICHEAL JONATHON DANIELS, and the Department's subsequent wrongful arrest and detention of Mr. DANIELS.

2. On March 17, 2009, Plaintiff DANIELS joined a group of friends, two men and two women, to celebrate St. Patrick's Day in the Historic Folsom restaurant district in Folsom, California. As the restaurants and bars in the area prepared to close in the very early morning hours of March 18, 2009, Plaintiff DANIELS and his friends walked to the downtown common parking lot shared by several Historic Folsom businesses. They were walking to Mr. DANIELS's car in the parking lot. On the way to the car, they saw and heard a group of four or five men talking loudly. The men appeared to yell something toward Mr. DANIELS's group. One of Mr. DANIELS's companions answered back, and after pausing briefly, Mr. DANIELS's group continued toward their car. Almost immediately, Defendant Sergeant ANDREA CHAPMAN of the Folsom Police Department drove into the lot, and the group of four or five men got in their car and left.

3. Defendant CHAPMAN got out of her vehicle. Without issuing any warning to Mr. DANIELS, and despite the fact that Mr. DANIELS had not done and was not doing anything to give her legal cause to use any force against him, Defendant CHAPMAN shot Mr. DANIELS with her Taser gun.

4. Defendant CHAPMAN's Taser completely debilitated Plaintiff DANIELS, freezing his body with an electrical shock and causing him to fall against a car, and then to the ground. Plaintiff DANIELS suffered a head injury from the fall and one of the Taser prongs embedded itself directly into a nerve in his arm, causing extreme pain.

5. Although Plaintiff DANIELS informed Defendant CHAPMAN and the other responding officers of the extreme pain in his wrist and hand from the Taser prong still embedded in his arm, Defendants CHAPMAN and H.R. ALVAREZ applied handcuffs to his injured wrist in a manner that pressed against the dart that was embedded in his arm, increasing his already excruciating pain. Mr. DANIELS pleaded with the officers to adjust the cuffs so that

they would not contact the dart that was pressing into his nerve. The officers disregarded his complaints, and mockingly accused him of faking.

6. Defendants CHAPMAN, ALVAREZ and JAMES DORRIS then purported to arrest the agonized Mr. DANIELS on charges of resisting arrest, California Penal Code § 148(a)(1), and disturbing the peace, California Penal Code § 415(1). The District Attorney never filed either of these charges, or any other charges, against Mr. DANIELS.

7. Plaintiff DANIELS had to have the Taser prong surgically removed from his wrist. As a result of the Tasering, Mr. DANIELS suffered nerve damage in his wrist and arm which has prevented him from working. He has undergone a strenuous and painful regime of physical therapy for his injuries and may require additional surgery or surgeries to correct his nerve damage. He continues to experience pain from his physical injury and suffers emotional distress typical of persons who are subjected to excessive force and police misconduct.

## JURISDICTION AND VENUE

8. This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution. The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. With respect to those claims brought pursuant to California law, Plaintiff has complied with the administrative claims requirements. The court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

9. The claims alleged herein arose in the City of Folsom, County of Sacramento, California. Therefore, venue in the Eastern District of California is proper pursuant to 28 U.S.C. § 1391(b)(2); E.D. Local Rule 120(d).

## PARTIES

10. Plaintiff MICHEAL JONATHON DANIELS is a citizen of the United States, and a resident of the City of Orangevale, County of Sacramento, and the State of California. MICHEAL JONATHON DANIELS is presently a free person and brings this action on his own behalf.

1   11.   Defendant CITY OF FOLSOM is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant CITY OF FOLSOM operates the Folsom Police Department.

12.   Defendant Sergeant ANDREA CHAPMAN was, at all times relevant hereto, a Sergeant in the Folsom Police Department. In committing the acts and omissions alleged herein, Defendant CHAPMAN was acting under color of state law and within the course and scope of her employment as a Sergeant of the Folsom Police Department. Plaintiff DANIELS is informed and believes and thereon alleges that as a Sergeant, Defendant CHAPMAN was the ranking police official with final policy-making authority for the officers under her command on the scene. Defendant CHAPMAN is sued in her official and individual capacities.

13.   Defendant Police Chief SAM SPIEGEL was at all times relevant hereto, the Chief of the Folsom Police Department. Plaintiff DANIELS is informed and believes and thereon alleges that Defendant SPIEGEL is the responsible party and final decision maker for the hiring, retention, screening, supervision, training, instruction, discipline, control, equipping and conduct of Defendant police officers. He is also charged with promulgating all orders, rules, instructions and regulations of the Folsom Police Department including but not limited to those orders, rules, instructions and regulations concerning the authority to use electronic weapons. In committing the acts and omissions alleged herein, Defendant SPIEGEL was acting under color of state law and within the course and scope of his employment as Chief of the Folsom Police Department. Defendant SPIEGEL is sued in his official and individual capacities.

14.   Defendant SHARON BLACKBURN was at all times relevant hereto, a member of the Folsom Police Department Training Division. Plaintiff DANIELS is informed and believes and thereon alleges that Defendant BLACKBURN is the responsible party and final decision maker for the training and instruction of the Folsom Police Department including, but not limited to the training and instruction concerning the use of electric shock weapons. In committing the acts and omissions alleged herein, Defendant BLACKBURN was acting under color of state law and within the course and scope of her employment as a member of the Folsom Police

Department Training Office.  Defendant BLACKBURN is sued in her official and individual capacities.

15.  Defendant RICK HILLMAN was at all times relevant hereto, the Professional Standards/Media Relations Sergeant of the Folsom Police Department.  Plaintiff DANIELS is informed and believes and thereon alleges that Defendant HILLMAN is the responsible party for and final decision maker with regard to maintaining professional standards in the police department, including but not limited to standards related to hiring, training, and disciplining officers.  In committing the acts and omissions alleged herein, Defendant HILLMAN was acting under color of state law and within the course and scope of his employment as the Professional Standards Sergeant of the Folsom Police Department.  Defendant HILLMAN is sued in his official and individual capacities.

16.  Defendant PAUL BONAVENTURE was at all times relevant hereto, the Folsom Police Department Field Operations Divisions Captain.  Plaintiff DANIELS is informed and believes and thereon alleges that Defendant BONAVENTURE is an official with final policy-making authority regarding the discipline, training and equipping of field officers for the Folsom Police Department.  In committing the acts and omissions alleged herein, Defendant BONAVENTURE was acting under color of state law and within the course and scope of his employment as a captain of the Folsom Police Department.  Defendant BONAVENTURE is sued in his official and individual capacities.

17.  Defendant KERRY MILLER was at all times relevant hereto, the City Manager for the City of Folsom.  Defendant MILLER is the chief executive and administrative officer of the city with broad responsibilities regarding discipline, firing, investigations and contracting.  Plaintiff DANIELS is informed and believes and thereon alleges that Defendant MILLER is an official with final policy-making authority regarding the discipline, investigation and termination of officers for the Folsom Police Department.  In committing the acts and omissions alleged herein, Defendant MILLER was acting under color of state law and within the course and scope of her employment as the City of Folsom's City Manager.  Defendant MILLER is sued in her official and individual capacities.

18. Defendant WARNER HERNDON was at all times relevant hereto, an officer in the Folsom Police Department. In committing the acts and omissions alleged herein, Defendant HERNDON was acting under color of state law and within the course and scope of his employment as an officer in the Folsom Police Department. Defendant HERNDON is sued in his official and individual capacities.

19. Defendant C. FRIEDERICH was at all times relevant hereto, an officer in the Folsom Police Department. In committing the acts and omissions alleged herein, Defendant FRIEDERICH was acting under color of state law and within the course and scope of his employment as an officer in the Folsom Police Department. Defendant FRIEDERICH is sued in his official and individual capacities.

20. Defendant JAMES DORRIS was at all times relevant hereto, an officer in the Folsom Police Department. In committing the acts and omissions alleged herein, Defendant DORRIS was acting under color of state law and within the course and scope of his employment as an officer in the Folsom Police Department. Defendant DORRIS is sued in his official and individual capacities.

21. Defendant H.R. ALVAREZ was at all times relevant hereto an officer in the Folsom Police Department. In committing the acts and omissions alleged herein, Defendant ALVAREZ was acting under color of state law and within the course and scope of his employment as an officer in the Folsom Police Department. Defendant ALVAREZ is sued in his official and individual capacities.

22. Defendant PAUL RICE was at all time relevant hereto, an officer in the Folsom Police Department. In committing the acts and omissions alleged herein, Defendant RICE was acting under color of state law and within the course and scope of his employment as an officer in the Folsom Police Department. Defendant RICE is sued in his official and individual capacities.

23. Plaintiff DANIELS is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, and therefore sues said Defendants by such fictitious names. Plaintiff DANIELS is informed and believes and thereon alleges, that each of them is responsible

in some manner for the injuries and damages alleged herein and that each DOE, in committing the acts herein alleged, acted within the scope of his or her employment and under color of state law, including supervisory and policy-making DOES.  Plaintiff will seek leave to amend this complaint to add their true names when the identities have been ascertained.  DOES 1 through 50 (including supervisory and policy-making DOES) are sued in their official and individual capacities.

24.     At all times mentioned herein, the Defendants and each of them, acted within the course and scope of their employment.

25.     At all times mentioned herein, the Defendants, and each of them acted under color of state law.

26.     Plaintiff DANIELS is informed and believes, and on that basis alleges, that each Defendant acted in concert with and as an agent of each other Defendant.

**EXHAUSTION OF PRE-LAWSUIT STATE LAW PROCEDURES**

27.     Plaintiff DANIELS filed a timely administrative claim with the CITY OF FOLSOM, pursuant to Cal. Gov't Code § 910, on or about September 9, 2009.  Defendants rejected the claim "by operation of law" on October 26, 2009 and provided notice of that rejection in a letter dated October 28, 2009.

**FACTS**

**A.     Excessive Force**

28.     On the evening of March 17, 2009, Plaintiff DANIELS gathered with a small group of companions, two men and two women, in the Historic Folsom restaurant district in Folsom, California to celebrate St. Patrick's Day.

29.     At approximately 1:40 a.m. on March 18, 2009, Plaintiff DANIELS and his companions were walking through the large common parking lot shared by several Historic Folsom restaurants, going to Mr. DANIELS's car, so that their designated driver could drive them home.

30.     In the parking lot, Mr. DANIELS saw and heard a group of four or five men who were talking loudly.  It appeared to Mr. DANIELS that the group of four or five men directed

some of their loud remarks to Mr. DANIELS and his companions. One of Mr. DANIELS's companions answered back. After pausing very briefly, Mr. DANIELS and his group continued toward their car.

31. According to her written report, Defendant CHAPMAN drove past the parking lot at approximately 1:42 a.m., in a marked patrol vehicle, and observed a group of people there. According to her written report, Defendant CHAPMAN circled the parking lot, stopped and got out of her car.

32. Plaintiff is informed and believes and thereon alleges that it is the ordinary practice of the Folsom Police Department to send one or more police cars to the Historic Restaurant district parking areas around "last call" and "closing time," and that this practice includes sending a police officer to the specific area of the parking lot where Mr. DANIELS was shot by the Taser.

33. Mr. DANIELS observed that as Defendant CHAPMAN pulled into the parking lot, the group of four or five men quickly got into their car and left, leaving only Mr. DANIELS and his companions in the immediate area around Mr. DANIELS.

34. Defendant CHAPMAN had not observed Mr. DANIELS engaging in any criminal activity, violent acts or threats of violent acts, and she did not make any attempts to investigate the situation to determine if criminal activity or violence by Mr. DANIELS were even possible concerns. Rather, without any reason to believe that Plaintiff DANIELS posed a threat to anyone or had engaged in any illegal activities, and without provocation or warning, Defendant CHAPMAN Tasered Plaintiff DANIELS.

35. Defendants DORRIS and ALVAREZ arrived in the parking lot soon after Defendant CHAPMAN discharged her Taser gun at Plaintiff DANIELS. According to their written reports, Defendants DORRIS and ALVAREZ approached Defendant CHAPMAN and observed that the wires from her Taser gun were still connected to Plaintiff DANIELS as he lay on the ground. One of these Taser prongs embedded itself in Plaintiff DANIELS's left wrist and was not removed until several hours later during orthopedic surgery.

36. Despite the fact that a Taser dart was painfully embedded in Plaintiff DANIELS's left wrist, and despite Plaintiff DANIELS's bleeding head injury, Defendants CHAPMAN and ALVAREZ placed him handcuffs and charged him with resisting arrest and disturbing the peace. These charges were never pursued by the District Attorney.

**B.    Plaintiff's Injuries**

37. The Taser completely debilitated Plaintiff DANIELS, causing his muscles to freeze and his body to fall against a car and then to the ground without any ability to break the fall. Plaintiff DANIELS hit his head during the fall and immediately began bleeding.

38. Defendant CHAPMAN then called for medical assistance, and Folsom Paramedics arrived on the scene. The paramedics wrapped a bandage around Mr. DANIELS's left wrist, covering the Taser dart that was embedded in his wrist. One of the officers then applied handcuffs tightly over the bandage, pressing on the dart that was embedded in Mr. DANIELS's nerve, aggravating the unbearable excruciating stabbing pain that Mr. DANIELS was already suffering. Mr. DANIELS immediately told the officers about the agonizing pain he was in, and begged them to move the handcuffs to another location. The officers' only response was to deliver a mocking stream of profanity and to tell him to "stop faking."

39. Mr. DANIELS was transported to Mercy Folsom Hospital, where Defendant CHAPMAN and other, presently unknown, officers met him. At the hospital, Plaintiff DANIELS informed the emergency room doctor of the extreme pain in his left hand, caused by the embedded Taser dart. The interaction between the bandage and the cuffs continued to transmit the slightest movement directly into Mr. DANIELS's injured nerve, causing terrible pain. Though Plaintiff DANIELS posed no safety threat and was obviously in excruciating pain as a result of the embedded Taser dart, Defendants CHAPMAN, DORRIS, ALVAREZ and other, presently unknown, officers ignored his agonized pleas. The officers did not take any action to remove or adjust the cuffs, or to reduce the torturous infliction of pain directly through Mr. DANIELS's injured nerves. Mr. DANIELS requested that they at least remove the one handcuff from his injured wrist, but the officers refused, leaving him cuffed that way for hours.

1  40. The emergency room doctor eventually attempted to remove the Taser dart from Plaintiff DANIELS's wrist, but was unable to do so. The emergency room doctor determined that Plaintiff DANIELS should have an orthopedic doctor remove the Taser dart, a process that would require surgery.

41. Doctors eventually determined that the dart became embedded in the superficial branch of the median nerve of Plaintiff DANIELS's wrist. In the early morning of March 18, 2009, Plaintiff DANIELS underwent surgery to remove the Taser dart. During the surgery, the doctors noted that the superficial branch of Plaintiff DANIELS's median nerve was completely transected, meaning that the Taser dart had penetrated DANIELS's tendon and slashed through the top-part of the nerve in his wrist, requiring the doctors to attempt surgical repair of the nerve.

42. Although the surgery was successful to remove the Taser prong, it failed to repair Plaintiff DANIELS's nerve damage. Plaintiff DANIELS continues to suffer from the significant nerve damage in his left hand and arm and has been unable to return to his work as a security alarm technician due to his injuries. He is unable to perform even basic tasks with his left hand, including grabbing, holding and carrying items. He has undergone extensive strenuous and painful physical therapy for his injuries, but may require additional surgery or surgeries in order to regain full use of his left hand and wrist. Because he is unable to work, he continues to experience ongoing financial hardship as a direct result of the Taser injury.

### C. False Arrest

43. Without probable cause or any legal reason, Defendant CHAPMAN arrested Mr. DANIELS and falsely charged him with violations of California Penal Code sections 148(a)(1) (resisting public or peace officers) and 415(1) (disturbing the peace). The District Attorney never filed these or any other charges against Plaintiff DANIELS.

### D. Policies, Practices, Customs and Usages

44. Plaintiff is informed and believes and thereon alleges that the Defendant CITY OF FOLSOM and its decision makers, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff DANIELS,

maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, and customs that caused his injuries. These policies, practices, and customs, include:

  a. Selecting, retaining, and assigning employees with demonstrable propensities for excessive force, violence and other misconduct;

  b. Failing to screen, hire, appoint, promote, train, supervise and discipline Defendant Police Officers who will enforce the laws and protect the constitutional rights of its citizens;

  c. Failing to adequately train, supervise, and control the officers in the Folsom Police Department in the use and dangers of electronic weapons, including the use and dangers of Taser guns;

  d. Failing to adequately train, supervise, and control the officers in the Folsom Police Department in the use of force;

  e. Failing to enforce the provisions of the Constitution of the United States concerning excessive force;

  f. Failing to promulgate, distribute and enforce clear, consistent and reasonable policies concerning the use of force as required by the Fourth and Fourteenth Amendments of the United States Constitution;

  g. Failing to promulgate, distribute and enforce clear, consistent and reasonable policies concerning the use of electronic weapons, including Taser guns, and the risks associated with such use as required by the Fourth and Fourteenth Amendments of the United States Constitution.

  45. Plaintiff is informed and believes and thereon alleges that the City of Folsom and its decision makers ordered, authorized, acquiesced in, tolerated, permitted or maintained policies, practices and customs that resulted in the unlawful and unconstitutional actions alleged herein. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or on Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of Plaintiff DANIELS.

10
AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS – CASE NO. 2:10-CV-00630-FCD-JFM
[373333-4]

46.     Plaintiff is informed and believes and thereon alleges that the City of Folsom and its decision makers were aware that on April 20, 2009, the Folsom Police Department Tasered a mentally unstable individual near Market Street and Duchow Way while this individual was sitting in a chair on his front porch.  This Tasering incident – which occurred less than five weeks after the Folsom Police Department Tasered Plaintiff Daniels without provocation – demonstrates a policy, practice or custom of abuse of Taser guns by the Folsom Police Department.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Violation of the Fourth and/or Fourteenth Amendments to the Constitution:**
**Excessive Force**
**(Against All Defendants)**

For his cause of action against all Defendants, Plaintiff states:

47.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 of this complaint as though fully set forth therein.

48.     Plaintiff DANIELS was subjected to the deprivation of rights by these Defendants, acting or pretending to act under color of state law and of statutes, or ordinances, regulations, customs and usages of the law of the United States, the State of California and of the County of Sacramento which rights include, but are not limited to, privileges and immunities secured to Plaintiff DANIELS by the Constitution and laws of the United States.  By reason of the acts specified herein, these Defendants violated the constitutional rights and liberty interests of Plaintiff DANIELS, including those provided in the Fourth and Fourteenth Amendments to the United States Constitution.

49.     Specifically, Defendants violated Plaintiff DANIELS's well established rights under the Fourth Amendment to be free from physical abuse, assault, battery, and to be free from excessive force being used against him to effectuate an arrest, search or seizure when Defendants:

    a.     Tasered Plaintiff DANIELS without warning or provocation, causing him severe pain and discomfort and resulting in serious injuries;

    b. Handcuffed Plaintiff DANIELS even though a Taser dart was embedded in his left wrist, causing him extreme pain;

    c. Refused to remove the handcuffs from Plaintiff DANIELS at the hospital, even though Plaintiff DANIELS posed no safety threat and was obviously suffering from serious pain due to the embedded dart.

  50. As a direct and proximate result of this conduct, Plaintiff DANIELS has suffered and continues to suffer from physical injuries, and has incurred general damages for the deprivation of his constitutional rights.  He also suffers from emotional distress typical of persons who are subjected to excessive force and police misconduct as described herein.

  WHEREFORE, Plaintiff DANIELS prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Policy, Practice, or Custom and/or Failure to Supervise and Train Adequately Folsom Police Department Officers**
**(Against Defendants CITY OF FOLSOM, CHAPMAN, SPIEGEL, BLACKBURN, HILLMAN, BONAVENTURE, MILLER, DORRIS and DOES 1 through 50 in their official capacities)**
(*Monell* and *City of Canton, Ohio* **Claims**)

  For his cause of action against Defendants CITY OF FOLSOM, CHAPMAN, SPIEGEL, BLACKBURN, HILLMAN, BONAVENTURE, MILLER, DORRIS, and DOES 1 through 50 in their official capacities, Plaintiff states:

  51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of this complaint as though fully set forth therein.  The allegations contained in paragraphs 52 through 55 below will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

  52. Defendants CITY OF FOLSOM, CHAPMAN, SPIEGEL, BLACKBURN, HILLMAN, BONAVENTURE, MILLER, DORRIS and DOES 1 through 50, under color of law, intentionally, negligently, and with complete and deliberate indifference to Plaintiff's rights, proximately caused Plaintiff to be deprived of his constitutional rights including, but not limited to, the Fourth and Fourteenth Amendments by:

1      a.    Failing to properly supervise the training and conduct of Defendant Police Officers despite constructive or actual knowledge of unlawful actions by Defendant Police Officers;

    b.    Failing to screen, hire, appoint, promote, train, supervise and discipline Defendant Police Officers who will enforce the laws and protect the constitutional rights of its citizens;

    c.    Failing to properly and adequately train the officers in the Folsom Police Department regarding the use of electronic weapons, including Taser guns;

    d.    Failing to properly and adequately train the officers in the Folsom Police Department regarding the use of force;

    e.    Failing to enforce the provisions of the Constitution of the United States concerning excessive force;

    f.    Failing to issue clear, consistent and reasonable policies concerning the use of force as required by the Fourth and Fourteenth Amendments of the United States Constitution;

    g.    Failing to issue clear, consistent and reasonable policies concerning the use of electronic weapons and the risks associated with such use as required by the Fourth and Fourteenth Amendments of the United States Constitution;

    h.    Presenting electronic weapons, including the Taser gun, to police officers as non-deadly control devices that could be used on violent or potentially violent individuals without causing serious injury, when in fact Defendants knew or should have known that since 2001, Tasers have been implicated in more than 346 deaths;

    i.    Maintaining a policy, practice or custom of encouraging police officers to use electronic weapons, including the Taser gun, under the theory that the use of such devices would result in fewer serious injuries to officers and suspects, when in fact Defendants knew or should have known that the use of Tasers has lowered the threshold at which force is used, resulting in officers' overuse and abuse of Taser guns, as evidenced by the Folsom Police Department's pattern and practice of injurious Tasering incidents in March and April of 2009;

j.  Condoning the use of electronic weapons, including the Taser gun, on suspects who do not pose an immediate threat to police officers or others, and without adequate warning to suspects of the impending Taser deployment.

53. Plaintiff is informed and believes and thereon alleges that the City of Folsom and its decision makers ordered, authorized, acquiesced in, tolerated, permitted or maintained policies, practices and customs that resulted in the unlawful and unconstitutional actions alleged herein. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or on Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of Plaintiff DANIELS.

54. Defendants knew or should have known that the policy, custom or practice of failing to properly supervise and train Defendant Police Officers would cause grievous injury to Plaintiff DANIELS in violation of his constitutional rights.

55. As a direct and proximate result of this conduct, Plaintiff DANIELS has suffered and continues to suffer from physical injuries, and has incurred general damages for the deprivation of his constitutional rights. He also suffers from emotional distress typical of persons who are subjected to violations as described herein.

WHEREFORE, Plaintiff DANIELS prays for relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**Assault and Battery**
**(Against Defendants CHAPMAN, ALVAREZ, DORRIS and DOES 1-50)**

For his cause of action against Defendants CHAPMAN, ALVAREZ, DORRIS, and DOES 1-50, Plaintiff states:

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57. Defendants CHAPMAN, ALVAREZ, DORRIS and DOES 1-50 acted with intent to cause harmful or offensive contact with Plaintiff, and the intended harmful or offensive contact did in fact occur.

58. The harmful or offensive contact was neither privileged nor consented to and was excessive, unreasonable and done with deliberate indifference to Plaintiff's rights and safety with the intent to inflict punishment above and beyond the reason for using the force in the first place.

59. As a result of Defendants CHAPMAN, ALVAREZ, DORRIS and DOES 1-50's intent to cause harmful or offensive contact with Plaintiff and the fact that the intended harmful or offensive contact did in fact occur, Plaintiff has suffered damages according to proof at the time of trial. Said damages are currently in excess of the jurisdictional minimum of this court and include general and special damages according to proof at the time of trial.

60. Defendants' conduct also amounts to oppression, fraud or malice within the meaning of California Civil Code sections 3294 *et seq.*, and punitive damages should be assessed against Defendants CHAPMAN, ALVAREZ and DORRIS for the purpose of punishment and for the sake of example.

WHEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**Police Negligence**
**(Against All Defendants in their official capacities)**

For his cause of action against all Defendants in their official capacities, Plaintiff states:

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62. At all times mentioned in this Complaint, Defendants owed a duty of reasonable care to Plaintiff DANIELS. Defendants breached that duty of care by Tasering Plaintiff DANIELS without provocation or warning, by arresting Plaintiff DANIELS without probable cause, and by continuing to keep Plaintiff DANIELS in handcuffs despite the fact that he posed no threat and was suffering from a severe and painful wrist injury. Defendants also breached their duty of care by:

    a. Failing to properly and adequately supervise the training and conduct of Defendant Police Officers despite constructive or actual knowledge of unlawful actions by Defendant Police Officers;

      b.     Failing to screen, hire, appoint, promote, train, supervise and discipline Defendant Police Officers who will enforce the laws and protect the constitutional rights of its citizens;

      c.     Failing to properly and adequately train the officers in the Folsom Police Department regarding the use of electronic weapons, including Taser guns;

      d.     Failing to properly and adequately train the officers in the Folsom Police Department in the use of force;

      e.     Failing to enforce the provisions of the Constitution of the United States concerning excessive force;

      f.     Failing to issue clear, consistent and reasonable policies concerning the use of force as required by the Fourth and Fourteenth Amendments of the United States Constitution.

      g.     Failing to issue clear, consistent and reasonable policies concerning the use of electronic weapons and the risks associated with such use as required by the Fourth and Fourteenth Amendments of the United States Constitution.

63.     It was reasonably foreseeable that the aforementioned conduct would subject Plaintiff DANIELS to an undue risk of harm.

64.     As a direct and proximate result of this conduct, Plaintiff DANIELS has suffered and continues to suffer from physical injuries, and is entitled to compensatory damages according to proof. He also suffers from emotional distress typical of persons who are subjected to violations as described herein.

65.     The negligent conduct of Defendants was committed within the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CLAIM FOR RELIEF
### False Arrest
### (Against Defendants CHAPMAN, ALVAREZ and DORRIS)

For his cause of action against Defendants CHAPMAN, ALVAREZ and DORRIS Plaintiff states:

66.     Plaintiff realleges and incorporates by reference paragraphs 1 through 65 as though fully set forth herein.

67.     On March 18, 2009, Defendants CHAPMAN, ALVAREZ and DORRIS deprived Plaintiff DANIELS of his clearly established right to be free from unlawful arrest without probable cause or a warrant, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.  Specifically, Defendants CHAPMAN, ALVAREZ and DORRIS violated Plaintiff DANIELS's constitutionally protected rights by:

   a.     Tasering and arresting Plaintiff without probable cause and in the absence of exigent circumstances;

   b.     Falsely charging Plaintiff DANIELS with violations of California Penal Code sections 148(a) (resisting public or peace officers) and 415(1) (disturbing the peace).

68.     Plaintiff DANIELS was subjected to the deprivation of rights by Defendants CHAPMAN, ALVAREZ and DORRIS acting or pretending to act under color of state law and of statutes, or ordinances, regulations, customs and usages of the law of the United States, the State of California and the County of Sacramento which rights include, but are not limited to, privileges and immunities secured to Plaintiff DANIELS by the Constitution and laws of the United States.  By reason of the acts specified herein Defendants CHAPMAN, ALVAREZ and DORRIS have violated Plaintiff's constitutional rights, including those provided by the Fourth and Fourteenth Amendments to the U.S. Constitution.

69.     As a direct and proximate result of this conduct, Plaintiff DANIELS has suffered and continues to suffer from physical injuries, and is entitled to compensatory damages according to proof.  He also suffers from emotional distress typical of persons who are subjected to violations described herein.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SIXTH CLAIM FOR RELIEF**
**California Civil Code §§ 52, 52.1**
**(Against All Defendants)**

For his cause of action against all Defendants, Plaintiff states:

17

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 as though fully set forth herein.

71. Defendants acting within the course and scope of their employment interfered and attempted to interfere with the rights of Plaintiff DANIELS secured under the Fourth and Fourteenth Amendments to the Constitution and under the California Constitution and laws of California.

72. By engaging in the aforementioned interference, Defendants, and each of them, acted in reckless and callous disregard of Plaintiff's rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant (but not the entity Defendants, which are immune from such damages) in an amount adequate to punish the wrongdoers and deter future misconduct.

73. As a proximate result of Defendants' aforementioned conduct, Plaintiff DANIELS suffered economic damages and non-economic damages, including, but not limited to, emotional distress typical of persons who are subjected to violations described herein, pain and suffering, lost wages and earnings, loss of employment, medical expenses and fear caused by the acts complained of herein.

74. As a proximate result of the conduct of Defendants, Plaintiff is entitled to the statutory civil penalties set forth in California Civil Code section 52.1, and attorneys' fees and costs of suit incurred herein.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

Wherefore, Plaintiff DANIELS prays for judgment against Defendants as follows:

1. For compensatory damages, including special damages for lost income, medical expenses, and any other economic damages according to proof;

2. For general damages in an amount according to proof, including pain and suffering, and emotional distress damages typical of persons who are subjected to violations as described herein;

3. For treble actual damages pursuant to Cal. Civ. Code §§ 52 and 52.1;

4. For exemplary damages against each Defendant (except the immune entity Defendants) in an amount sufficient to make an example of those Defendants and to deter future misconduct;

5. For injunctive and other equitable relief as appropriate;

6. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Cal. Civ. Code §§ 52 and 52.1; Cal. Civ. Code § 1021.5, and as otherwise authorized by statute or law;

7. For costs of suit; and

8. For such other and further relief as the court deems just and proper.

Dated: May 26, 2010                    Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Ernest Galvan*
    Ernest Galvan
    Attorney for Plaintiff

Dated: May 26, 2010                    Respectfully submitted,

LAW OFFICES OF GERI LYNN GREEN, LC

By: */s/ Geri Green*
    Geri Green
    Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: May 26, 2010                    Respectfully submitted,

ROSEN, BIEN & GALVAN, LLP

By: */s/ Ernest Galvan*
    Ernest Galvan
    Attorney for Plaintiff

Dated: May 26, 2010                    Respectfully submitted,

LAW OFFICES OF GERI LYNN GREEN, LC

By: */s/ Geri Green*
    Geri Green
    Attorney for Plaintiff